# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hedges Industrial Enterprises, Inc., | No. CV-09-8113-PCT-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Rio Tinto PLC; Rio Tinto Limited; Rio Tinto America Inc., and Kennecott Utah Copper LLC, | |
| Defendants. | |
| Kennecott Utah Copper LLC, | |
| Counter-Plaintiff, | |
| vs. | |
| Hedges Industrial Enterprises, Inc. | |
| Counter-Defendant, | |
| and | |
| Michael Hedges, | |
| Third-Party Defendant. | |
| Hedges Industrial Enterprises, Inc., | |
| Third-Party Plaintiff, | |
| vs. | |
| Motion Industries | |
| Third-Party Defendant. | |

Pending before the Court are the Motion to Dismiss for Lack of Lack of Personal Jurisdiction filed by Defendants Rio Tinto PLC and Rio Tinto America (Dkt. # 71) and the Motion to Dismiss filed by Defendant Kennecott Utah Copper LLC ("Kennecott") (Dkt. # 73). For the reasons set forth below, the Court grants both Motions with leave to amend.[1]

## BACKGROUND

In 2002, Hedges Industrial Enterprises, Inc. ("Hedges") and Defendants entered into an contract pursuant to which Hedges agreed to perform maintenance on Kennecott's hydraulic jacks and to provide Kennecott with a safety inspection program at the Bingham Canyon mine in Utah. (Dkt. # 72 Ex. 2 at ¶ 2, # 55 at ¶ 6.) According to Hedges, Defendants allegedly breached that agreement, made defaming statements regarding Hedges's performance of the contract, and then misappropriated certain of Hedges's trade secrets. (Dkt. # 55.)

Rio Tinto PLC and Rio Tinto America now move to dismiss the claims against them for lack of personal jurisdiction. Kennecott moves to dismiss the defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

**I. Rio Tinto's Motion to Dismiss for Lack of Personal Jurisdiction**

**A. Legal Standard—Rule 12(b)(2)**

When the parties dispute whether personal jurisdiction over an out-of-state defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). This is so, even though the defendant is the moving party on a 12(b)(2) motion. *Id.* In the absence of an evidentiary hearing, however, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, ___ F.3d ___, 2010 WL 2135302, at *2 (9th Cir. 2009) (*citing Pebble Beach Co. v. Caddy,* 453 F.3d

---

[1] The parties' requests for oral argument are denied because oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1151 (9th Cir. 2002)). In considering the motion, a court may "assume the truth of allegations in a pleading" to the extent that such allegations are not "contradicted by affidavit." *See Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (*citing Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)); *see also Rio Props.*, 284 F.3d at 1019 (observing that only "uncontroverted allegations in [the] complaint must be taken as true"). Where there are "conflicts between the facts contained in the parties' affidavits," depositions, and other filings, those conflicts "must be resolved in [the plaintiff's] favor."*Am. Tel. & Tel., Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotations omitted). In cases where a plaintiff survives the motion to dismiss under a prima facie burden of proof, the plaintiff still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc*, 557 F.2d at 1285 n. 2.

To establish that personal jurisdiction over a defendant is proper, the plaintiff must demonstrate that (1) the state's long arm statute confers jurisdiction over that defendant; and (2) that "the exercise of jurisdiction comports with the constitutional principles of Due Process." *See Rio Props.*, 284 F.3d at 1019 (citation omitted). Because Arizona's long-arm statute extends jurisdiction "to the maximum extent permitted by the . . . Constitution of the United States," the Court's personal jurisdiction inquiry largely collapses into an analysis of Due Process. *See* Ariz. R. Civ. P. 4.2(a); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Williams v. Lakeview Co.*, 199 Ariz. 1, 5, 13 P.3d 280, 282 (2000).

**B.     The Court Lacks Jurisdiction over Defendants Rio Tinto PLC and Rio Tinto America**.

Based on the current record, the exercise of jurisdiction over either Rio Tinto PLC or Rio Tinto America does not comport with principles of Due Process. Under the Due Process Clause, a defendant must have sufficient "minimum contacts" with the forum state so that subjecting the defendant to its jurisdiction will not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Under this standard, "the defendant's conduct and connection with the forum State [must be] such that he [or she] should reasonably anticipate being haled into

- 3 -

court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In accord with the Due Process Clause, the "minimum contacts" standard may be satisfied in two ways. First, a court may exercise general jurisdiction when the defendant's contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Second, a court may exercise specific jurisdiction if a defendant "has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation omitted). "In addition to establishing the requisite contacts, the assertion of jurisdiction must be found reasonable." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 344 F. Supp.2d 686, 690 (W.D. Wash. 2003) (citation omitted).

In cases where a defendant has a wholly-owned subsidiary that possesses minimum contacts, the subsidiary's contacts may be imputed to the defendant if the plaintiff demonstrates that the subsidiary acted as an alter-ego or general agent of the defendant. *See Davis,* 885 F.2d at 520. The subsidiary's contacts can also be imputed when the parties engage in a joint venture in the relevant forum. *Bensmiller v. E.I. Dupont De Nemours & Co.*, 47 F.3d 79, 84 (2nd Cir. 1995).

**(1) Rio Tinto Is Not Subject to General Jurisdiction in Arizona.**

First, a court may assert general jurisdiction over a defendant if the defendant's activities in the state are substantial or continuous and systematic, even if the cause of action is unrelated to those activities. *Helicopteros*, 466 U.S. at 415; *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986); *Data Disc*, 557 F.2d at 1287 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446–47 (1952)).

Hedges fails to provide an adequate legal basis for the exercise of general jurisdiction over either Rio Tinto PLC or Rio Tinto America. According to uncontroverted affidavit evidence, Rio Tinto PLC is a parent holding company incorporated in England with its principal place of business in London, England (*see* Dkt. # 72, Ex. 1 at ¶ 4), and Defendant Rio Tinto America is a Delaware corporation that owns and manages a number of different

companies in various industries (*id.* at ¶ 13). Additionally, neither Rio Tinto PLC nor Rio Tinto America is licensed to do business in Arizona, has any employees in Arizona, owns any real or tangible property in Arizona, sells goods or services in Arizona, or has ever paid income or property tax in Arizona. (Dkt. # 72 Ex. 1 at ¶ 5–9.) The uncontroverted affidavit evidence further provides that neither company engages or operates mining or processing facilities within Arizona. (*Id.* at ¶ 10.)

The Court rejects Hedges argument that the Rio Tinto entities are subject to general jurisdiction based on their fifty-five percent ownership stake in Resolution Copper. While it appears that Resolution Copper is an Arizona company, Resolution Copper is not a defendant, and insofar as this Court can surmise from Hedges's Amended Complaint, Resolution Copper has nothing to do with the wrongdoings alleged in this case. To the extent that Resolution Copper's contacts might be a basis for general jurisdiction under the alter-ego, agency, or joint venture theories, Hedges has not set forth any facts or allegations in its Amended Complaint, or elsewhere, that justify imputing Resolution Copper's contacts to Rio Tinto PLC or Rio Tinto America. *See Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) (setting forth the parameters for imputing a subsidiary's contacts to its parent); *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp.2d 1170 (D. Ariz. 2010) (same). Instead, the Rio Tinto entities' uncontroverted affidavit precludes the application of the alter-ego, agency, and joint venture theories to the facts of this case. For example, the affidavit indicates that Resolution and the Rio Tinto entities do not share the unity of control that is required to find jurisdiction under the alter-ego or joint-venture theories. *See Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34,37, 821 P.2d 725, 728 (outlining the factors in establishing a "unity of control" under an alter-ego theory); *Tanner Cos. v. Superior Court*, 144 Ariz. 141, 143, 696 P.2d 693, 695 (1985) (setting forth the requirements, including "an equal right to control," for finding jurisdiction under a joint-venture theory). Additionally, the affidavit asserts that Rio Tinto America's interest in Resolution is limited to that of a holding company. *See Doe*, 248 F.3d at 929 (holding that the agency theory does not apply where a parent holding company takes actions that are merely consistent with the parent's status as an investor).

**(2) Rio Tinto Is Not Subject to Specific Jurisdiction in Arizona.**

A court may exercise specific jurisdiction over a defendant when the cause of action arises directly from the defendant's contacts with the forum state. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under this three-part inquiry, specific jurisdiction exists only if: (1) the defendant *purposefully availed* itself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or *purposely directs* conduct at the forum that has effects in the forum; (2) the claim *arises out* of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is *reasonable*. *Id.*; *see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)). Under this three-step analysis, the Court finds that neither Rio Tinto PLC nor Rio Tinto America is subject to specific jurisdiction in Arizona.

**(a)(i) Purposeful Availment**

The Ninth Circuit has held that "[a] purposeful availment analysis is most often used in suits sounding in contract." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2002). A defendant has purposefully availed itself of a forum when it "has taken deliberate action within the forum state or . . . has created continuing obligations to forum residents." *Ballard*, 65 F.3d at 1498. Although contacts must be more than random, fortuitous, or attenuated, contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum. *Burger King*, 471 U.S. at 472–73, 75. This is so, even if a defendant has no physical presence within the forum. *Id.*

Hedges has failed to set forth facts indicating that either Rio Tinto PLC or Rio Tinto America purposefully availed itself of an Arizona forum. According to Hedges, the Rio Tinto entities subjected themselves to jurisdiction in Arizona by "specifically contract[ing] with Hedges." (Dkt. # 76.) Nevertheless, while it appears that Hedges contracted with *Kennecott*

to perform jack maintenance services for Kennecott's Utah operation, the fact that Hedges may have removed some of the jacks and performed some of that maintenance in Arizona does not suggest that either Rio Tinto America or Rio Tinto PLC purposely availed themselves of the privileges of conducting business in *Arizona*. Even assuming that one or both of the Rio Tinto entities are parties to this agreement, the mere presence of a contract with an out-of-state party is insufficient to establish minimum contacts for personal jurisdiction. *See Doe*, 248 F.3d at 924 (*citing McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 n.9 (9th Cir. 1988)). Instead, the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," are the proper factors to be considered in evaluating whether a contract establishes sufficient minimum contacts. *Burger King*, 471 U.S. at 478–79. Hedges's complaint pleads no facts pertaining to the test set out in *Burger King*. The Court, therefore, rejects Hedges's argument that its contract with the Defendants provides a basis for specific jurisdiction.

Hedges's reliance on *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003), to the contrary, is misplaced. In *Harris Rutsky*, the Ninth Circuit held that purposeful availment existed because the defendants had *intentionally directed action towards residents of California* by actively seeking contracts with residents of that state. *Id.* Hedges's allegations demonstrate no such affirmative conduct on the part of Rio Tinto America or Rio Tinto PLC.

The Court also rejects Hedges's argument that the purposeful availment test is satisfied by Resolution Copper's contacts with Arizona. Again, Resolution Copper is not a defendant in this action and there is no allegation that Resolution Copper had anything to do with the wrongdoings alleged in this case. Similarly, while the Rio Tinto entities allegedly made periodic business trips to Arizona, there is no allegation that the misconduct at issue has anything to do with those contacts. *See Ballard*, 65 F.3d at 1498 (noting that purposeful availment requires that the claim be related to the contacts at issue).

### (a)(ii) Purposeful Direction

In cases sounding in tort, the Ninth Circuit employs a purposeful direction analysis. *Schwarzenegger*, 374 F.3d at 802. This three part test for purposeful direction provides:

> *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." . . . [Under] *Calder*, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Id.* at 803 (citing *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)). Applying this test to Hedges's tort claims, Rio Tinto PLC and Rio Tinto America are not subject to personal jurisdiction on the facts alleged.

There are simply no allegations that Rio Tinto PLC or Rio Tinto America intentionally directed tortious conduct at Arizona. In its Amended Complaint, Hedges refers specifically to the five individuals who were involved with the alleged tortious conduct: (1) Green, (2) Lund, (3) Withers, (4) White, and (5) Ridge. (Dkt. # 55.) The Amended Complaint indicates that all of these individuals, with the exception of Withers, are employed by Kennecott, rather than any Rio Tinto entity. (*Id.* at ¶ 10–15.) And while Hedges alleges that Withers is an employee of an undisclosed Rio Tinto entity, (*see id.* at ¶ 13), the Amended Complaint does not plead any facts suggesting that Withers was employed in Arizona or that he purposefully directed tortious conduct at Arizona. The only misconduct asserted against Withers is his allegedly defamatory email. There is no allegation, however, that the email was circulated in Arizona—a prerequisite for jurisdiction based on a claim of defamation. *See Casualty Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 600 (9th Cir. 1992) (holding that "circulation of the libel in the forum jurisdiction is a key factor in determining whether a nonresident defendant has sufficient contacts with the forum"). Accordingly, Hedges has failed to plead sufficient facts that either Rio Tinto PLC or Rio Tinto America purposefully directed any tortious conduct at Arizona.

### (b) Arising Out Of Forum Related Contacts

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of a defendant's forum related activities. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). The "arising out of" requirement is met if but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that:

> The "but for" test is consistent with the basic function of the "arising out of" requirement—it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction. . . . The "but for" test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds*, 499 U.S. 585 (1991).

The Court rejects Hedges's contention that the "but for" requirement has been satisfied. According to Hedges, the Rio Tinto entities' payment agreement demonstrates that personal jurisdiction is appropriate. (Dkt. # 76.) However, the facts alleged in the Amended Complaint indicate only that some unidentified Rio Tinto entity agreed to pay Hedges for services performed at the Kennecott mining operation in Utah. (Dkt. # 76 Ex. 13–14.) The fact that those payments may have been deposited into an Arizona bank account does not create jurisdiction in Arizona. Furthermore, Hedges has not adequately demonstrated that the payment agreement is the "but for" cause of any of its claims. Even Hedges's breach of contract claim does not appear to relate to the payment agreement. Instead, that claim seems to be premised on Kennecott's decision to stop using Hedges's services for jack maintenance and repair.

Hedges, therefore, has failed to allege facts demonstrating that his claims relate to the Rio Tinto entities' Arizona contacts. Because the Amended Complaint does not set forth facts that meet the "purposeful availment" and "arising out of" requirements, Hedges fails

to provide a basis for exercising specific jurisdiction over Rio Tinto PLC or Rio Tinto America in Arizona.[2]

## II. Kennecott's Motion to Dismiss Pursuant to Rule 12(b)(6).

### A. Legal Standard: Motion to Dismiss for Failure to State a Claim

To survive a dismissal for failure to state a claim under to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And while "[a]ll allegations of material fact are taken as true and construed in the light most favorable" to the non-moving party, *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996), "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (internal quotations marks omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

### B. Hedges Has Failed to State a Claim for Defamation Under Rule 12(b)(6).

Hedges has not plead sufficient facts to state a claim for either defamation or defamation *per se*.[3] Under Arizona law governing simple defamation, "one who publishes

---

[2]According to the Ninth Circuit, jurisdictional discovery should "ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotation omitted). Because Hedges has not made a substantial showing that any of the pertinent facts are controverted as to Rio Tinto PLC or Rio Tinto America, jurisdictional discovery is not appropriate at this time. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that a request jurisdictional discovery should be denied where the request is premised merely on a hunch or a belief that such discovery will result in relevant evidence). Prior to receiving jurisdictional discovery against either of these Defendants, Hedges would have to establish a more specific basis on which to believe there may be jurisdiction as to either.

[3]This Court need not address at this time whether Arizona or Utah law applies to the defamation claim because Hedges fails to plead adequate facts for the purposes of either law.

a false and defamatory communication concerning a private person . . . is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard for these matters, or (c) acts negligently in failing to ascertain them." *Dube v. Likins*, 216 Ariz. 406, 417, 167 P.3d 93, 104 (Ct. App. 2007). Publication as it pertains to defamation is communication of defamatory statements to a third party. *Id.* Similarly under Utah law, a claimant must show that "defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994). To state a claim for defamation *per se*, the statements must "on their face falsely tend to impeach one's honesty, integrity or reputation." *Boswell v. Phoenix Newspapers*, 152 Ariz. 1, 6, 730 P.2d 178, 183 n.4 (Ct. App. 1985) (citation omitted); *see also Larson v. SYSCO Corp.*, 767 P.2d 557, 560 (Utah 1989) (holding that under Utah law, statements are defamatory *per se* when they are "false and allege criminal conduct on the part of the plaintiff or impute the contracting of some loathsome disease, unchaste behavior (on the part of a woman) or conduct which is incongruous with the exercise of a lawful business, trade, profession or office.").

With respect to his defamation claim, Hedges has done nothing more than plead conclusory allegations of law that are insufficient to raise a right to relief above the speculative level. *See Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555. Hedges alleges four defamatory statements in his complaint; however, each of these statements fails to meet the pleading requirements set forth in *Twombly* and *Iqbal.*

First, Hedges alleges that Kennecott made defamatory statements when an employee sent emails indicating that Hedges would have to go on welfare soon. (Dkt. # 55 at ¶ 10.) It is unclear, however, whether these emails were published to some third party. From the face of the Amended Complaint, it appears that the allegedly harassing emails were merely "responses" to Hedges's requests for payment from Kennecott.

Hedges next points to statements from Kennecott personnel implying that he was responsible for too many jacks needing repair. (Dkt. # 77.) According to the Amended Complaint, Hedges was once asked "why so many jacks were going out for repair?" On another occasion two Kennecott employees voiced displeasure about the number of jacks going out. (Dkt. # 55 at ¶ 12.) These facts alone, however, are insufficient to state a claim for defamation. These statements appear to be little more than an opinion, for which a claim for defamation does not lie. *See Burns v. Davis*, 196 Ariz. 155, 165, 993 P.2d 1119, 1130 (Ct. App. 1999) ("We reiterate that mere opinion, hyperbole, and political invective are protected speech and as such do not constitute defamation."); *West*, 872 P.2d at 1015 ("Because expressions of pure opinion . . . are incapable of being verified, they cannot serve as the basis for defamation liability.").

Third, Hedges asserts that he received a defamatory email from Withers reprimanding him for removing Kennecott property without permission. Again, Hedges fails to plead any facts suggesting that the email was ever published. To the contrary, the Amended Complaint implies that the email exchange occured solely between Hedges and Withers.

Finally, Hedges points to the "Jack # 4 Report" and alleges that it contained "numerous defamatory statements." (Dkt. # 77.) Hedges's Amended Complaint, however, fails to set forth facts suggesting that any information published in the "Jack # 4 Report" was defamatory in nature. Without any additional facts pertaining to the contents of "Jack # 4 Report," this Court cannot assess whether the statements therein are defamatory or defamatory *per se*.

**CONCLUSION**

For the foregoing reasons, the Court finds that Hedges has failed to assert a prima facie case for exercising personal jurisdiction over Rio Tinto PLC or Rio Tinto America in Arizona. The Court also finds that Hedges has failed to state a claim for defamation against Kennecott.

**IT IS THEREFORE ORDERED:**

(1) The Rio Tinto entities' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 71) and Kennecott's Motion to Dismiss Hedges's defamation claim (Dkt. # 73) are **GRANTED WITH LEAVE TO AMEND**.

(2) Hedges shall have **thirty days (30) or until July 29, 2010** to file its Second Amended Complaint. Hedges shall also file with the Court and all Defendants a redline version indicating all changes from the Amended Complaint and the Second Amended Complaint.

(3) Should Hedges fail to file its Second Amended Complaint in the requisite time frame, the Clerk of the Court is directed to **TERMINATE** Rio Tinto PLC and Rio Tinto America from this action.

DATED this 30th day of June, 2010.

*/s/ G. Murray Snow*
G. Murray Snow
United States District Judge